This is an appeal from a judgment which issued a writ of mandamus commanding Taylor Hardin, as Commissioner, Alabama Mental Health Board, and Hugh Adams, as Director, Technical Staff, State Building Commission, State of Alabama, to certify to the State Comptroller a warrant in the amount of $15,413.76 for payment to Fullilove Excavating Company, Inc., a corporation. The trial court issued the writ after finding the money was due Fullilove for site excavation of certain material at the Birmingham Developmental Center of the Alabama Mental Health Board.
There are three issues to be addressed on this appeal:
1. Did the trial court err in not changing the venue of the action from Jefferson to Montgomery County?
2. Were the allegations of the verified answers and responses to the petition for mandamus put in issue?
3. Was certification to the Comptroller for payment of the warrant properly compelled by the writ of mandamus?
This action by Fullilove Excavating Company, Inc., a corporation, against Taylor Hardin, as Commissioner, Alabama Mental Health Board; Hugh Adams, as Director, Technical Staff, Building Commission, State of Alabama; and Wendell R. Morgan, as Assistant Attorney General, Legal Division, Department of Mental Health, State of Alabama, sought to compel, by writ of mandamus, the payment to Fullilove Excavating of the sum of $15,413.76 by the Alabama Mental Health Board. The basis for the relief requested by Fullilove Excavating was that its request for final payment on a contract performed for the Mental Health Board was approved but because of unjustified actions of Hardin and Adams the warrant issued to Fullilove in final payment was $15,413.76 less than the amount previously approved for final payment.
Motions to dismiss were filed by defendants which also challenged the venue of the action and sought transfer of it from Jefferson to Montgomery County. Morgan was dismissed as a party defendant and transfer of the action was denied.
The gist of Hardin's verified response and answer to the petition for mandamus was that the approved final payment request was reduced by $15,413.76, upon reconsideration, because in Hardin's judgment and opinion payment of that sum was not in accordance with the terms and specifications of the contract. The gist of Adams' response and answer was that it was his opinion the Mental Health Department was due to be credited with the sum of $15,413.76 against the final payment which he had previously approved in behalf of the State of Alabama Building Commission because that sum was in excess of the amount due to be paid according to the contract specifications. Thus the issue raised by the responses and answers, tried before the court without a jury, was: 1. After approval of final payment, including the sum of $15,413.76, could Hardin and Adams interpret, or reinterpret, the contract and specifications and rescind prior approval of payment.
Before addressing the third issue for review on this appeal we will dispose of the first and second.
 Venue
Objections to venue were presented in the motions to dismiss. The pertinent parts of Hardin's and Adams' motions, and supporting affidavits read as follows:
Hardin's, from his motion to dismiss:
 "1. Venue in this action is improperly laid in the Circuit Court of Jefferson County. Defendant requests that this cause be transferred to the Circuit Court of Montgomery County pursuant to Rule 82 (d), Alabama Rules of Civil Procedure. The Defendant is a resident citizen of Montgomery County as testified to by the affidavit submitted with this Motion."
From the supporting affidavit submitted by Wendell Morgan:
 "* * * I am personally acquainted with the Defendant Taylor Hardin and have been so acquainted for more than *Page 781 
five years. Both Taylor Hardin and myself are resident citizens of Montgomery County, Alabama, and have so resided in Montgomery County, Alabama, for more than five years preceding the filing of this Petition for Mandamus. My address is 4747 Falcon Lane, Montgomery, Alabama, 36116. Taylor Hardin's address is 660 Cloverdale Road, Montgomery, Alabama 36106."
Adams', from his motion to dismiss:
 "1. Venue in this action is improperly laid in the Circuit Court of Jefferson County. Defendant requests that this cause be transferred to the Circuit Court of Montgomery County pursuant to Rule 82 (d), Alabama Rules of Civil Procedure. The Defendant is a resident citizen of Pike County as testified to by the affidavit submitted with this Motion."
From his affidavit:
 "My name is Hugh D. Adams and I am the Director of Technical Staff, State Building Commission, State of Alabama. I am a resident citizen of Pike County, Alabama, and my address is General Delivery, Pine Level, Alabama, 36065."
No mention is made in either motion, or in either affidavit, of the official residence of Hardin or Adams. This litigation involves acts of each of them in their official capacities, yet their requests for change of venue relate only their place of personal residence. Suits involving public officials are properly maintained in the county of their official residence.Tri-State Corp., Inc. v. State ex rel. Gallion, 272 Ala. 41,128 So.2d 505 (1961). Although, because of statutory provision providing otherwise there are exceptions to this rule, the rule is generally followed. Boswell v. Citronelle — MobileGathering Inc., 292 Ala. 344, 294 So.2d 428 (1974).
We should point out the distinction between this case and that of Alabama Youth Services Board v. Ellis, Ala.,350 So.2d 405 (1977). The motion to dismiss in the record of that case recited:
 "To dismiss the action on the ground that it is brought in the wrong county because the defendant board is a public board of statewide jurisdiction, not limited in its field of operation to any county or district, and its principal office is located at the state capital in Montgomery County, Alabama."
The action was against the Board and the motion properly presented the fact of the location of the principal office of that Board. In Ellis this court stated:
 "There is a considerable body of law in this state, as there is elsewhere, requiring an action against a state agency or a state official in his official capacity to be brought in the county of official
residence. A statement of the general rule appears in 92 C.J.S. Venue § 115, p. 817:
 "`A governmental body is generally regarded as having its residence for purposes of venue in the county where its principal place of business is located, or in the place where its domicile is fixed by law. . . .'" (emphasis added)
In this case no showing was made of the official residence of Hardin and Adams, against whom the action is maintained, therefore the personal privilege of venue was waived. Venue is a personal privilege, of that there can be no dispute; indisputably it may be waived. Boudrow v. H R ConstructionCo., 284 Ala. 60, 222 So.2d 154 (1969); 77 Am.Jur.2d, Venue § 51, p. 900.
 Whether the Truth and Sufficiency of the Answers to the Petition were put in Issue
The essence of the petition in this case was that defendants Hardin and Adams had wrongfully deducted from Fullilove's request for final payment of monies, due it for performance of a contract, the sum of $15,413.76 that had previously been approved for payment, and paid, on a partial payment request.
The essence of the answers of Hardin and Adams was that prior payment had been made because the terms of the contract had been misinterpreted by them. Trial was had on the issues made by the allegations of the petition and those of the answers. *Page 782 
Evidence was adduced, after which the trial court resolved the issues in favor of Fullilove.
Hardin and Adams argue that the facts alleged in their answers, which were verified, stood uncontroverted and therefore the writ should have been denied because no pleading was interposed which put in issue the legal sufficiency or truth of their answers. In support they rely on case law and Tit. 7, § 1073, Code, which provides:
 "In any such proceeding [mandamus], the return or answer shall not be conclusive, but the truth or sufficiency thereof may be put in issue and controverted." (emphasis added)
This statute has been construed as permissive, not mandatory:
 "* * * The averments of the answer or return were not put in issue or controverted as relator could have done under our statute, § 1073, Title 7, Code 1940, if it had been so inclined. * * *"
Further:
 "* * * The sufficiency of the answer to the alternative writ will be considered without further pleading although it is not improper for relator to interpose demurrer or motion to quash the answer. * * * And as shown above, the relator may take issue with and controvert the averments of the answer. * * *" (emphasis added) Tingle v. J.D. Pittman Co., 267 Ala. 29, 99 So.2d 435 (1957).
In this case there is no question that the allegations of the answers were controverted by the evidence as will be demonstrated from a reading of the findings of the trial court. These findings will be set out later in this opinion. That evidence may be taken to controvert the truth of the answers as well as to test whether, if true, they present a legal bar to issuance of the writ is without question. Tingle, supra.
 Propriety of Granting the Writ
After trial, the record of which is contained in five volumes and reflects the transactions between the Mental Health Board and Fullilove over a span of more than two years, the trial court made the following findings, amply supported by the evidence:
 "Fullilove Excavating Company, Inc., sometimes hereinafter referred to as Fullilove, entered into a contract for site excavation on the Birmingham Developmental Center for the Alabama Mental Health Board, sometimes hereinafter referred to as the Board.
 "The contract, dated January 14, 1974, was for the sum of $1,439,124.00 which, when added to a change order dated August 3, 1976, amounted to a total approved contract price of $1,498,044.66. The contract documents, plans, specifications, as well as the overall on-site supervision, was prepared and controlled by the Board and/or its duly authorized representatives.
 "Fullilove submitted requests for periodic payments for work performed under the contract which were processed through regular channels of authorities for approval. In November, 1974, Fullilove, as required by the contract documents, made request upon the Board's on-site engineer, to examine and determine the disposition of certain materials to be excavated. An employee of the Board determined that the material in question was `garbage' and, therefore, `unsuitable materials excavation' under the detailed classification of excavation as shown by the contract documents. Authorization and instructions were given to Fullilove to `excavate and haul away' the unsuitable materials, with notice of such action being sent to the Board.
 "Fullilove removed 8,128 cubic yards of `garbage' which is undisputed. A request for periodic payment was submitted in July, 1975, by Fullilove which was duly approved in due course and payment made for same. Included as a part of this request was a sum for $24,384.00 for `unsuitable material excavation.' The Board, thereafter, approved, in due course, each and every request for payment submitted by Fullilove, including the request for final payment. Each such *Page 783 
request, as required by the Board, was accompanied by a summary of work completed for each and every item of work for which a unit price was applicable under the contract.
 "Fullilove's request for final payment was approved in due course for the sum of $143,720.67. Thereafter, a warrant was issued for the sum of $128,306.91, which represented a decrease of $15,413.76 from Fullilove's approved final payment."
Hardin and Adams sought to justify reduction in the amount of final payment to Fullilove on the basis that previous payment to it for excavating "unsuitable material" was erroneous because all material excavated under the terms of the contract was to be paid for at the lower unit price paid for excavating "unclassified material." This position was based upon a review and interpretation of the contract after Fullilove's final payment request had been approved, including the $15,413.17 in dispute in this action. The reduction was effected by amending a change order under the contract and Fullilove's final estimate (payment request). We note that the provisions of the contract had previously been interpreted otherwise as reflected by the evidence and found by the trial court. Payment had been made to Fullilove on the basis of a prior interpretation that excavation of the material was properly paid for as "unsuitable material." We would agree with the interpretation of the contract that Hardin and Adams originally placed upon it.
Adams and Hardin contend that the trial court was in error in issuing the writ of mandamus because in interpreting the contract as they did they were exercising discretion, which they had a right to do, therefore Fullilove showed no clear right to issuance of the writ. Fullilove contends that it performed all required of it under an executed contract, at a price fixed under the contract, and its performance was approved accordingly; therefore, it had a clear right to the writ of mandamus to compel Hardin and Adams to certify to the Comptroller for payment to it the amount withheld from final payment.
The trial court heard this case without a jury and made its findings of fact and conclusions of law. No citation of authority is needed, other than Rule 52, ARCP, to remind one of the favorable presumption given to those findings and the judgment. Based upon its findings, the trial court interpreted the contract as calling for payment of the disputed sum and concluded the writ should issue because of a clear right to it to prevent a failure of justice and the absence of any other remedy, or to prevent abuse of discretion, or to correct an arbitrary action outside the exercise of a reasonable discretion. The judgment in this case could be affirmed on the basis of any of these theories. However, we think the most sound basis to be that the writ was properly issued because there was a clear right to it so as to prevent a failure of justice.
Numerous authorities are cited by the litigants, pro and con, as to the propriety of issuing the writ of mandamus in this case. Of these authorities we find the most apt, by analogy, to be State Board of Administration v. Roquemore, 218 Ala. 120,117 So. 757 (1928). As previously stated, the evidence showed an executed contract; the trial court found there was a stated price in it to be paid for the work performed; the work was performed; and performance and payment were approved. The court, in Roquemore stated:
 "* * * The petition shows an executed contract of purchase and sale, for a definite price, and therefore a clear legal duty on the part of the highway department, through its executive head, presumptively, to audit and approve petitioner's claim, in order that it may be paid out of the appropriate fund on warrant drawn by the state auditor in accordance with the usual practice.
 "It is of course true that discretionary action or choice of action on the part of public officials cannot ordinarily be coerced by mandamus. [citations omitted] But, in cases like this, the board's *Page 784 
discretion is exhausted when it gives an order for materials and accepts delivery of them in due season; or, if there is receipt without express acceptance, when the materials are accepted by their actual use. Of course it always remains for the responsible officer to ascertain the existence of the facts upon which his obligation to perform the duty depends, but that is not the kind of judgment or discretion which would avert the writ of mandamus. [citations omitted] If the rule were otherwise, there would be little, if any field for the operation of the writ."
In this case the discretion of Hardin and Adams was exhausted, at the very latest, when approval was given Fullilove's final payment request if not when the July 1975 periodic payment request was approved and paid. There was no right to amend the final payment request and withhold payment of the $15,413.76 sum.
There was no error in the entry of final judgment in this cause issuing the writ of mandamus. Mandamus was the appropriate remedy:
 "Mandamus is an extraordinary legal remedy, grantable only when petitioner shows a clear, specific legal right for the enforcement of which there is no other adequate remedy. * * *" All American Life and Casualty Co. v. Moore, 286 Ala. 492, 242 So.2d 661 (1970):
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, FAULKNER and ALMON, JJ., concur.