JONES, Justice
(dissenting):
I have thought long and searchingly upon what I here say in dissent lest I appear overly alarmed. While I hope this reflection results in a measure of self-imposed restraint, nevertheless, I am constrained to speak forcibly and forthrightly against the majority opinion, which I believe constitutes a most serious and dangerous erosion of our judicial system.
By a bare majority, whether wittingly or unwittingly, this Court has abolished the distinction between review by extraordinary writs of mandamus and by appeals. The restricted office of mandamus, until today, was well defined and well understood; and its uniform application placed it within the narrow confines of other extraordinary appellate remedies. Indeed, so well known is its limited function — to compel public officials to perform ministerial and mandatory duties and prohibit them from acting beyond and outside their authority — that the *883 practicing Bar rarely encounters any confusion in distinguishing the ■ application of its mode of review from that of straight appeals. For a good statement of this distinction, see City of Decatur v. Mohns, 235 Ala. 640, 180 So. 297 (1938).
Review by extraordinary writs is of common law origin. Our inclusion of these remedies in ARAP 21 is a mere codification of their common law evolvement. The right of appeal exists only by virtue of statute or by Supreme Court rule. Code 1975, § 12-22-91 (permitting the State to appeal from an order declaring a statute unconstitutional), is the only statutory authorization for review by appeal in favor of the State in a criminal prosecution. Currently, no rule of this Court expands this right.
My concern is not one of technical niceties. The judicial system constitutes one of the three separate and equal branches of our constitutional government. The courts of our land stand as the ultimate bulwark against tyranny, serving as the watchtower of liberty by insuring that the rule of law is equally and fairly administered. The foundation of such a watchtower cannot be shifting sand. Instead, its structure of hon- or and integrity must be grounded on solid and proven concepts lest its beacon lose both its brilliance and its focus. The fundamental concept of our judicial system — requisite to its stability and endurance — is its underpinning of fixed principles — procedural and substantive, well defined and commonly understood — to govern the decision-making process. Adherence to rules, not for their own sake but for the sake of the principles reflected thereby, is the essence of a government of laws and not of men. This is our legal heritage; and to abandon its basic precepts is to engage in unwarranted experimentation at grave risk of undermining our time-tested judicial institutions.
This is not a plea for unaltered rules of law. Inherent in the system is both the power and the mode for change. Stability can hardly be defended as an end in itself. Stare decisis is a golden rule, not an iron rule. Indeed, the common law — likened unto a running stream and not a dead sea— is itself an evolving process, everchanging to comport with experience and to meet contemporary societal standards and needs.
But it is one thing to change the rule and then proceed in accordance with its newly pronounced principle, and quite another thing to leave the rule unchanged and simply ignore its operative effect for the sake of a perceived desirable result. Even if we assume abstract justice in a given case, such perversion of the traditional process lends itself ultimately to neither justice nor stability of the law and its application. Instead, it leads inexorably to an ad hoc type of decision making by committee rather than by an orderly judicial process. To paraphrase Justice Jackson, equal justice under law presupposes some law.[1]
That such a perversion has occurred here is not fairly debatable. The State has no right of appeal. The trial judge acted within his authority to entertain the Defendant’s motion for a new trial. If he has the right to entertain it, then surely one of his options, within the exercise of his judicial discretion, is to grant the motion if any ground therefor is valid. To be sure, if in his considered judgment any ground is valid, he is duty bound to grant the motion. While mandamus will lie to compel the exercise of his discretion, it is not the office of the writ to compel the manner in which it is exercised. The trial judge can be forced to rule, one way or the other; but he cannot be told which way to rule. East v. Todd, 284 Ala. 495, 226 So.2d 153 (1969). The one narrow exception is where the trial court’s course of action is mandated by law (e.g., in certain cases involving jurisdiction and venue, or where the relief sought involves purely ministerial or mandatory duty.) [2]
*884 In dealing with this exception, some of the cases resort to the phrase “unless he abuses his discretion.” Strictly speaking, this phrase should read, “unless the trial judge attempts to exercise discretion when no discretion is permitted under the law.” I have found no Alabama case, and the majority opinion cites none, that applies the abuse of discretion exception to grant a writ of mandamus where the trial judge had the right to exercise his judicial discretion.[3] See State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757 (1928). This should not be surprising, for a literal interpretation of the phrase “unless he abuses his discretion” would effectively destroy the essential substantive distinction between the right of review by appeal and by petition for writ of mandamus. Denson v. First National Bank of Birmingham, 276 Ala. 146, 159 So.2d 849 (1964).
To review by mandamus the propriety of the trial court’s order granting defendant’s motion for a new trial by evaluating its merits is the identical standard for review by appeal. Once the need for the right of appeal is thus eliminated, the elements that constitute mandamus as an extraordinary writ are lost and the two methods of review equate; and, thus, we have usurped by case law the statutory and rule-making prerogative to establish the right of review by appeal.
One final observation: I personally initiated an addition to the proposed Rules of Criminal Procedure to provide the State the right of appeal from an order granting the defendant a new trial. The Rules as proposed by the Special Committee limited the State’s right of appeal to certain adverse pretrial rulings. The ABA Standards of Criminal Justice are not so limited. Indeed, I would have no objection to adopting a rule per the instant case for prospective application, giving the State the right to review by appeal a trial court’s order granting the defendant a new trial. Such a holding would be entirely proper, though, in my opinion, the criminal rules are the more appropriate means of promulgating and applying such a procedural change in our law.
But this discussion is of purely academic interest, for a rule allowing appeals by the State is no longer necessary. Henceforth, the right of review of an order granting a new trial is available by way of petition for a writ of mandamus. To be sure, the State has gained much more than that: Where, as here, the writ is granted summarily by the Court of Criminal Appeals and this Court denies the petition for writ of certiorari or affirms the appellate court’s order, the State succeeds in setting aside the order granting a new trial and reinstating the judgment of conviction and sentence without giving the defendant the benefit of an in-depth consideration as mandated for review of cases by appeal.

. See Justice Jackson’s concurring opinion in Brown v. Allen, 344 U.S. 443, 546, 73 S.Ct. 397, 407, 97 L.Ed. 469 (1953).

. For an excellent example of this exception, see Ex parte Weissinger, 247 Ala. 113, 22 So.2d *884 510 (1945), in which the Court, by writ of mandamus, compelled the trial court to apply the venue statute in a divorce action according to its express terms.

. The majority’s application of “abuse of discretion” in this motion for new trial context is misplaced, resulting from an ill conceived concern over the validity of a double jeopardy plea upon retrial. This unfortunate prejudgment of the ultimate outcome of the case produces an erroneous result oriented holding and is based upon a misinterpretation of Hudson v. Louisiana [1981], 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). This is a clear case of a trial judge’s entertaining personal doubts about the verdict and acting to prevent a perceived injustice. Hudson bars a second trial only where the new trial motion’s ground of insufficiency of the evidence is sustained.